IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KIM DOTCOM, *et al*. )<br>)<br>Defendants. ) | The Honorable Liam O'Grady<br><br>Case No. 1:12-cr-00003-LO |

### RESPONSE OF KYLE GOODWIN TO QTS REALTY TRUST, INC'S RENEWED MOTION FOR PROTECTIVE ORDER

**I.  INTRODUCTION**

More than three years ago, as part of a criminal investigation, the government searched and seized multiple servers that its target, Megaupload, used to provide file storage and transfer services. As a result, Kyle Goodwin, an interested—and undisputedly innocent—third party, lost access to his property, which was housed on those servers. As soon as was practicable, Mr. Goodwin sought relief from this Court, requesting that Your Honor establish a procedure for the return of video files he uses in his business. That motion is still pending and must now be decided or Mr. Goodwin (and similarly placed individuals) will be irretrievably injured.

The owner of Megaupload's physical servers, QTS Realty Trust, Inc. (the successor to Carpathia Hosting Inc.), has renewed its request to be relieved of maintaining the servers that have held Mr. Goodwin's data and that of many other innocent customers of Megaupload. Mr. Goodwin joins QTS in asking this Court to allow innocent third parties to finally regain control of their property, whether it be physical servers or the data housed on those servers.

It is unclear who currently controls Mr. Goodwin's property. QTS says it does not have any interest in the data and cannot access it. The government claims it has released control over

1

the servers and the data on them. Megaupload, for its part, says it cannot afford to turn the servers back on and allow customers like Mr. Goodwin to retrieve their data because the government controls its financial assets.

It is clear, however, that through no fault of his own, *Mr. Goodwin* does not control his property, and that this Court has the authority to remedy that. Mr. Goodwin respectfully requests this Court exercise that power and grant him, and those similarly situated, the return of their property.

## II.     FACTUAL BACKGROUND

Mr. Goodwin has described the full procedural and factual background, as it applies to his situation, in his earlier filings. *See* Dkt. No. 51 at 3-6; Dkt. No. 91. at 2-6.

In brief, Mr. Goodwin formed his business, OhioSportsNet, in July 2011 to capture local high school sporting events on video. Declaration of Kyle Goodwin ("Goodwin Decl."), attached as Ex. A, at ¶ 1. As part of that business, Mr. Goodwin and his producers travel all over the state and film various high school sports. *Id.*

Mr. Goodwin stored his footage on Megaupload, which offered him an ideal solution for sharing recordings amongst his employees during the production process. *Id.* at ¶ 2. Mr. Goodwin backed up the raw footage of the sporting events, player and coach interviews, and promotional packages on a personal hard drive. *Id.* at ¶ 6. In mid-January 2012, his hard drive crashed. Mr. Goodwin planned to retrieve his videos from the Megaupload service. Before he could do so, the government seized the servers that housed those videos, effectively seizing Mr. Goodwin's property as well as that of many other law-abiding Megaupload customers. *Id.* at ¶ 7.

Mr. Goodwin's files now exist in limbo, languishing on the servers QTS still maintains. Like a bank customer whose diamond necklace is stored in a safe deposit box located in a bank

that has been seized by government regulators, Mr. Goodwin cannot retrieve his property. Unlike such a customer, however, Mr. Goodwin has no procedure currently available to remedy that situation.

Loss of access to the files Mr. Goodwin had stored in his account at Megaupload left him unable to provide his customers (student athletes and their parents) with an audiovisual record of their athletic accomplishments. *Id.* at ¶ 8. It also deprived Mr. Goodwin of access to a significant collection of his own original creative work. *Id.* at ¶ 9. The loss of access to these files has caused financial and reputational harm to Mr. Goodwin that could be remedied in significant part by allowing him to retrieve his files. *Id.* at ¶¶ 10-11.

On March 30, 2012, Mr. Goodwin moved this Court for an order establishing a process for him to retrieve his property. *See* Dkt. No. 51; Dkt. No. 90; Dkt. No. 91; Dkt. No. 105; and associated briefs and exhibits. On June 29, 2012, the Court heard argument on Mr. Goodwin's motion. *See* Dkt. No. 112; Dkt. No. 126. The parties submitted plans regarding a Rule 41(g) hearing. *See* Dkt. No. 133; Dkt. No. 134; Dkt. No. 135; Dkt. No. 136. Mr. Goodwin's request for relief has been pending ever since.

The loss of access to his property, a direct result of the Government's seizure of Megaupload, has caused significant and enduring harm to Mr. Goodwin and doubtless many others who lack the resources to seek relief from this Court.

### III.   LEGAL ANALYSIS

#### A.   The Government's Seizure of Megaupload's Servers Wrongfully Deprived Innocent Third Parties of Access to Their Property.

Mr. Goodwin's previous filings explain in detail the legal basis for return of his property, including, *inter alia*, that the government has displayed a callous disregard for his constitutional rights. *See, e.g.*, Third Party Kyle Goodwin's Proposal re: Return of Property Under Fed. R.

3

Crim. P. 41(g), Dkt. No. 135 at 2-5. Mr. Goodwin respectfully refers the Court to those filings, but offers a brief summary here for the Court's convenience.

The government's criminal investigation of Megaupload has had an unfair adverse impact on numerous third parties, including Mr. Goodwin. When the government seized QTS's servers, it also seized the content housed on those servers. And while this kind of seizure is relatively novel, this kind of impact on third parties is not. In fact, the laws authorizing both criminal forfeiture and seizure proceedings recognize the potentially dangerous overbreadth of those doctrines. For this very reason, courts have long counseled against their irresponsible use. The Supreme Court has observed: "Forfeitures are not favored; they should be enforced only when within both letter and spirit of the law." *United States v. One 1936 Model Ford V-8 De Luxe Coach, Motor No. 18-3306511*, 307 U.S. 219, 226 (1939) (citation omitted); *see also United States v. Reckmeyer*, 628 F. Supp. 616, 619 (E.D. Va. 1986) ("The general policy opposed to forfeitures is based on their tendency to inordinately [sic] punish both the guilty and the innocent."). Criminal forfeitures are meant to be solely punitive in nature, and "prudential arguments concerning the burdens of restraint are clearly permitted by the statute, which recognizes the due process concerns that are triggered by judicial orders aimed at third parties." *United States v. Siegal*, 974 F. Supp. 55, 58 (D. Mass. 1997) *(*citing *United States v. Real Prop. in Waterboro*, 64 F.3d 752, 756 (1st Cir. 1995)); *see also United States v. Lizza Indus., Inc.*, 775 F.2d 492, 498 (2d Cir. 1985) ("Forfeiture under RICO is a punitive, not a restitutive, measure."); *United States v. Cauble*, 706 F.2d 1322, 1349 (5th Cir. 1983) ("The RICO forfeiture is *in personam*: a punishment imposed on a guilty defendant.").

Accordingly, the law provides important third-party safeguards. For example, innocent owners of seized property may move to recover that property in what is commonly called an

4

"innocent owner defense." *See, e.g.*, 18 U.S.C. § 983(d); 18 U.S.C. § 1963(g). In addition, Rule 41(g) of the Federal Rules of Criminal Procedure provides that any "person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed R. Crim. P. 41(g).

As these provisions recognize, the government cannot just execute its search warrant and avoid all responsibility for the property incidental to that warrant, especially when the government's actions harm innocent third parties. In *Presley v. City of Charlottesville,* for example, the Fourth Circuit held that an individual's Fourth Amendment protection against unreasonable search and seizure is implicated when there "is some meaningful interference with an individual's possessory interests in that property." 464 F.3d 480, 487 (4th Cir. 2006) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Indeed, a "deprivation [of one's property] need not be [a complete deprival] to constitute a seizure subject to constitutional protections. Rather, the Fourth Amendment also governs temporary or partial seizures." *Id.*

Here, the government, in executing its search warrants on QTS's servers and otherwise seizing Megaupload's property (and freezing its funds), has impermissibly and significantly interfered with Mr. Goodwin's right to access his property, violating his Fourth Amendment rights, whether or not it is directly blocking his access to QTS's servers.

Moreover, as *Presley* also shows*,* the government cannot sidestep its responsibility for a Fourth Amendment deprivation by contending that a private party—here, QTS—exercises greater physical control over the property in question than the government. *See* Resp. of the United States to Non-Party Kyle Goodwin's Mot. For the Return of Property Pursuant to 18 U.S.C. § 1963 or Fed. R. of Crim. Proc. 41(g), Dkt. No. 99, at 7 (arguing that the government is

5

not "currently depriving the defendant [sic] of his property"[1] and that it does not have "possession, custody, or control" of that property). The government's disposal of seized property does not render moot a motion for its return. *United States v. Kanasco, Ltd.*, 123 F.3d 209, 210 n.1 (4th Cir. 1997). Indeed, the government itself conducted a search, seized the property, and impounded the funds that would otherwise have been available to finance the property's return. As a direct result of these actions, Mr. Goodwin's property is stranded on servers that he cannot access. Meanwhile Megaupload's funds are in government hands and QTS understandably wishes to dispose of the servers and data.

> B. The Court Can and Should Establish a Means to Allow Megaupload Users Like Mr. Goodwin to Retrieve Their Noninfringing Files.

As set forth in Mr. Goodwin's previous briefing on this matter, the Court can and should use its equitable powers to establish a mechanism for the return of property to innocent third parties like Mr. Goodwin. Courts have equitable power to hear and provide relief to innocent third parties whose property has been seized, even before adjudication of the underlying case. *See United States v. Mageean*, 649 F. Supp. 820, 822 (D. Nev. 1986), *aff'd*, 822 F.2d 62 (9th Cir. 1987) (holding that the court "may have an adjunct power to stay the disposition of forfeited property pending its adjudication of third party claims even though the statute gives no express authority for such actions"); *Real Prop. in Waterboro*, 64 F.3d at 755 (holding that "persons appearing to have an interest in the property" must be given an opportunity to challenge a forfeiture (citation omitted)).

The Court may also take guidance from RICO cases, where Congress has given the Attorney General "expansive" equitable authority "to refashion forfeitures to protect innocent

---

[1] Mr. Goodwin is not a defendant, and assumes the government intended to refer to Mr. Goodwin's property, not defendant Megaupload's property. It is undisputed that the government has possession of Megaupload's property. *See* Superseding Indictment, Dkt. No. 34, at 83-89.

6

third parties." *United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1190 (D.C. Cir. 1995) (citing 18 U.S.C. § 1963(g)(1)); *accord United States v. Regan*, 858 F.2d 115, 121 (2d Cir. 1998) ("[O]rders directed at third parties are strong medicine and should not be used where measures that are adequate and less burdensome on third parties are available.").

For example, former Megaupload customers could be permitted to access their data for a period of time, based on a reasonable showing that the customer is the legal owner of that data, such as presentation of the customer's username and password. Such an arrangement would be consistent with the legislative and judicial policy behind equity receiverships in analogous contexts. *Cf.* Fed. R. Civ. P. 66 (identifying the governing law for receiverships). A trusted third party could be appointed to manage the entire process.

### IV. CONCLUSION

The passage of time has not lessened the harm to Mr. Goodwin. For the reasons set forth above and in Mr. Goodwin's previous papers to this Court, Mr. Goodwin joins QTS, another third party caught in the government's seizure of Megaupload's property and freezing of its funds, in asking this Court to fashion a remedy that makes the innocent third parties whole. Specifically, Mr. Goodwin requests this Court quickly ensure the rightful return of his property, and that of others similarly situated.

Dated: August 21, 2015　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　/s/ John S. Davis
　　　　　　　　　　　　　　　　　　　　John S. Davis
　　　　　　　　　　　　　　　　　　　　WILLIAMS MULLEN
　　　　　　　　　　　　　　　　　　　　200 So. 10th St.
　　　　　　　　　　　　　　　　　　　　Richmond, VA 23218
　　　　　　　　　　　　　　　　　　　　Telephone: (804) 420-6296
　　　　　　　　　　　　　　　　　　　　Facsimile: (804) 420-6507
　　　　　　　　　　　　　　　　　　　　Email: jsdavis@williamsmullen.com

Corynne McSherry
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Facsimile: (415) 436-9993
Email:corynne@eff.org

Abraham D. Sofaer
THE HOOVER INSTITUTION
Stanford University
434 Galvez Mall
Stanford, CA 94305-6010
Telephone: (650) 723-1754
Email: asofaer@stanford.edu

*Attorneys for Interested Party Kyle Goodwin*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2015, the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users, upon all counsel of record.

Dated: August 21, 2015                    /s/ John S. Davis
                                                                  John S. Davis